A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

UNITED STATES DISTRICT COURT 02-20860
SOUTHERN DISTRICT OF FLORIDA

Case No. _____ CIV-GOLD

Lenzo Grooms Jr.                    )

_____  )

_____  )

_____  )

(Enter above the full name of the
plaintiff or plaintiffs in this     )
action.)

                    v.              )

Dr. Rubin Veliz                     )

Dr. VIJAY                           )

Dr. Ernesto A. Sivilla              )

Dr. Diaz                            )

Dr. Ronald J. Solorzano             )
Wexford Health Source Inc.          )
(Enter above the full name of the
defendant or defendants in this
action.)

MAGISTRATE JUDGE
SORRENTINO

Instructions for Filing Complaint by Prisoners
Under the Civil Rights Act, 42 U.S.C. 1983

    This packet includes four copies of the complaint form and two
copies of the Application to Proceed without Prepayment of Fees and
Affidavit. To start an action you must file an original and one copy
of your complaint for the court and one copy for each defendant you
name.  For example, if you name two defendants, you must file the
original and three copies of the complaint (a total of four) with the
court.  You should also keep an additional copy of the complaint for
your own records.  All copies of the complaint must be identical to
the original.

    Your complaint must be legibly handwritten or typewritten. Please
do not use pencil to complete these forms.  The plaintiff or

Page 1 of  6



plaintiffs must sign and swear to the complaint.  <u>If you need</u>
<u>additional space to answer a question, use an additional blank page.</u>

Your complaint can be brought in this court only if one or more
of the named defendants is located within this district.  Further, it
is necessary for you to file a separate complaint for each claim that
you have unless they are all related to the same incident or issue.

There is a filing fee of $150.00 for this complaint to be filed.
If you are unable to pay the filing fee and service costs for this
action, you may petition the court to proceed in forma pauperis.

Two blank Applications to Proceed without Prepayment of Fees and
Affidavit for this purpose are included in this packet.  Both should
be completed and filed with your complaint.

In addition, if the Judge directs the U.S. Marshal to serve the
summons and complaint to each defendant, the United States Marshal
will require you to pay for the cost of this service.

You will note that you are required to give facts.  THIS
COMPLAINT SHOULD NOT CONTAIN LEGAL ARGUMENTS OR CITATIONS.

When these forms are completed, mail the original and the copies
to the Clerk's Office of the United States District Court, Southern
District of Florida, 301 North Miami Avenue, Miami, Florida 33128-
7788.

I.    Previous Lawsuits

A.    Have you begun other lawsuits in state or federal court
      dealing with the same facts involved in this action or
      otherwise relating to your imprisonment?

                              Yes ( )    No (✓)

B.    If your answer to A is yes, describe each lawsuit in the
      space below.  (If there is more than one lawsuit, describe
      the additional lawsuits on another piece of paper, using the
      same outline.)

1.   Parties to this previous lawsuit

Plaintiffs: _____ N/A _____

_____

Defendants: __ N/A _____

_____

2.   Court (if federal court, name the district; if state
     court, name the county): __ N/A _____

_____

3.   Case Number: _____

4.   Name of Judge to whom case was assigned: __ N/A __

_____

5.   Disposition (for example: Was the case dismissed?
     Was it appealed? Is it still pending?):

N/A _____

_____

6.   Approximate date of filing lawsuit: __ N/A _____

7.   Approximate date of disposition: __ N/A _____

II.  Place of present confinement: Everglades Correctional
Institution, 1601 S.W. 187ᵗʰ Ave., Miami, Florida 33185

A.   Is there a prisoner grievance procedure in this
     institution?
                              Yes ( ✓ )   No (   )

B:   Did you present the facts relating to your complaint in
     the state prisoner grievance procedure?
                              Yes ( ✓ )   No (   )

Page 3 of  6

C.   If your answer is YES:

1.   What steps did you take? _Request,_
_Informal Grievance, Formal_
_Grievance, Grievance Appeal._

2.   What was the result? _No relief rendered._
_____
_____

D.   If your answer is NO, explain why not: _N/A_
_____
_____

III. Parties

(In Item A below, place your name in the first blank and
place your present address in the second blank.  Do the same
for additional plaintiffs, if any.)

A.   Name of plaintiff _Lenzo Grooms Jr. #028300, D-4-102-L_

Address _Everglades Correctional Institution,_

_P.O.Box 949000, Miami, Florid 33194·9000_

In Item B below, place the full name of the defendant in the
first blank, his official position in the second blank, and
his place of employment in the third blank.  Use Item C for
the names, positions, and places of employment of any
additional defendants.

B.   Defendant _Dr. Rubin Veliz, et al._

is employed as _Chief Health Officer_

at _North Annex Dade Correctional Institution_

Page 4 of  6

c.   Additional Defendants: _Dr. Vijay ;_

_Dr. Ernesto A. Sivilla;  Dr. Diaz;_

_Dr. Ronald J. Solorzano ;_

_Wexford Health Source Inc. ;_

_John or Jane Doe._

_____

IV.   Statement of Claim

State here as briefly as possible the <u>facts</u> of your case.
Describe how each defendant is involved.   Include also the
names of other persons involved, dates, and places.

Do not give any legal arguments or cite any cases or statutes.
If you intend to allege a number of related claims, number and
set forth each claim in a separate paragraph.   (Use as much space
as you need.   Attach an additional blank page if necessary.)

See Attached

See Attached

Page 5 of  6

Also: defendants, Dr. Vijay; Dr. Ernesto A. Sivilla; Dr. Diaz; Dr. Ronald J. Solorzano; Wexford Health Source Inc.; John or Jane Doe.

V.    Relief

State briefly exactly what you want the court to do so for you. Make no legal arguments. Cite no cases or statutes.

Grant judgment for compensatory damages from each and every defendant jointly and severally for pain and suffering in the amount of $500,000.00 plus such greater amounts as may be proved at trial, punitive damages, attorney fees actually and necessarily incurred, and the prescribed medical care.

Signed this ___8th___ day of __March__, 20_02_.

_____
(Signature of plaintiff
or plaintiffs)

I declare under penalty of perjury that the foregoing is true and correct. Executed on __3-8-2002__

_____
(Signature of plaintiff)

Rev. 11/00

Page 6 of  6

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### CIVIL

LENZO  GROOMS Jr.
  Plaintiff

VS.

DR. RUBIN VELIZ

DR. VIJAY

DR. ERNESTO A. SIVILLA

DR. DIAZ

DR. RONALD J. SOLORZANO

WEXFORD HEALTH SOURCE INC.

JOHN OR JANE DOE #1
  Defendants

CASE NO. _____

Jury Trial Demanded

## COMPLAINT
### UNDER 42 U.S.C. § 1983

Lenzo Grooms Jr. #D28300
Everglades Correctional Init.
P.O. Box 949000
Miami, Florida 33194-9000

1

## PRELIMINARY STATEMENT

This is a civil rights action filed by Lenzo Grooms Jr., a state prisoner for damages and injunctive relief under 42 U.S.C. 1983, alleging the denial of prescribed medical care in violation of the eighth amendment to the United States Constitution.

## JURISDICTION

This honorable court has jurisdiction to entertain plaintiff's claims of violation of federal constitutional rights under 42 U.S.C. §§ 1331 (a) and 1343.

Furthermore, if this honorable court deems any of the claims set out herein to be better resolved via state tort claims, this honorable court has jurisdiction to entertain under 28 U.S.C. § 1367.

2

## PARTIES INVOLVED

1). Plaintiff, <u>Lenzo Grooms Jr.</u>, is a state prisoner incarcerated at Everglades Correctional Institution (Everglades, C.I.), under the care and custody of the Florida Department Of Corrections (F.D.O.C.).

2). Defendant, <u>Dr. Rubin Veliz</u>, was the chief health officer at Dade Correctional Institution's North Annex (Dade C.I. North) (F.D.O.C). He is sued in his individual and official capacity.

3). Defendant, <u>Dr. Ronald J. Solorzano</u>, was the senior physician at Dade C.I. North (F.D.O.C.). He is sued in his individual and official capacity.

4). Defendant, <u>Dr. VIJAY</u>, was the chief health officer at Glades Correctional Institution (Glades C.I.) (F.D.O.C.). She is sued in her individual and official capacity.

5). Defendant, <u>Ernesto A. Sivilla</u> (medical doctor) was the chief health officer at Everglades C.I. (F.D.O.C.). He is sued in his individual and official capacity.

6). Defendant, <u>Dr. Diaz</u>, is the regional medical director for Wexford medical care. He is sued in his individual and official capacity.

7). Defendant, <u>Wexford Health Source Inc.</u>, is the private medical care giver responsible for adequate medical care of inmates at Everglades C.I. (F.D.O.C.) contracted. They are sued in their individual and official capacity.

3

All defendants have acted and continue to act under color of state and federal law at all time relevant to this complaint.

## OPENING STATEMENT

The claims set forth herein arose from the deliberate denial of prescribed medical treatment, of which has resulted in the continuous great pain and suffering and ongoing deterioration of plaintiffs physical and mental health in violation of the eighth Amendment of the United States Constitution.

## STATEMENT OF THE CASE AND FACTS

1). In the year of 1976 plaintiff suffered a serious injury to his right foot when he accidentally stepped on a broken bottle.

2). Plaintiff was treated at John Hopkins Hospital, Baltimore, Maryland, where he under-went minor surgical repair for his very serious injury.

3). However, the injury resulted in permanent damage to wit plaintiff now suffers a painful recurring growth at the point of entry to the injury on his right foot.

4

4). Plaintiff returned to John Hopkins Hospital for further medical care, after x-rays and re-examination plaintiff was diagnosed with a cronic disorder due to the damage caused by the injury. Plaintiff was prescribed a specific ongoing preventative form of medical care for his serious medical need, to include surgical removal of the abnormal growth periodically for the rest of his life.

5). In the year of 1985 plaintiff was incarcerated in the Florida Department Of Corrections (F.D.O.C.). In the year 1985 and for a few years there after, prisoners were permitted to receive care packages from home, thus plaintiff was able acquire the needed materials for self administered care.

6). Around the late 80s (F.D.O.C.) policy changed so that prisoners were nolonger permitted to receive packages from home so after being transferred to Dade C.I. in 1989 plaintiff was required to ware state issued boots that were course and poorly made in which he had ware all day on the job to which he was assigned.

7). Due to the improper state boots job assignments and discontinuation of packages plaintiff had to report to medical and request medical care for his seriously painful medical need. Thus began a long series of unsuccessful experimental treatments bu various prison doctors.

8). Around the year 1993 plaintiff was placed under the care of Dr. Martinez, and after many attempts to cure plaintiff's serious medical foot disorder, Dr. Martinez determined that plaintiff required medical care by a specialist/Podiatrist. Thus in 1996 plaintiff was sent out to see specialist — Podiatrist Dr. Michael Cook at the South Miami Foot Health Center. Located at 6350 Sunset Drive South Miami, Florida 33143.

9). After examination by Dr. Cook plaintiff was again diagnosed with a cronic foot disorder that only corrective surgery might cure. However, Dr. Cook prescribed a course of preventative care over the required surgery.

10). Plaintiff was returned to see Dr. Cook on a periodic basis on an average of two or three times a year.

11). In or around March 1998, during one of plaintiff's visits to the foot health care clinic. Dr. Cook determined that the state issued foot wear plaintiff was forced to wear was in fact an irritant to plaintiff's disorder, and may be the cause of the rapid re-accurance of the unnatural growth. Thus, Dr. Cook prescribed special orthopedic shoes with molded inserts and removal of the growth as needed.

12). By late July 1998 plaintiff still had not received the prescribed orthopedic shoes, molded inserts, or any further medical care for his serious medical need. Plaintiff filed an informal grievance addressing the matter.

6

13). On August 30, 1998 plaintiff's informal grievance was returned.

14). On August 30 1998 plaintiff filed a request to the medical department at Dade C.I. North requesting information concerning the required and prescribed preventative medical care for his serious medical need. See exhibit (B) of appendix.

15). As is shown in the response section of exhibit (B) defendant Dr. Rubin Veliz denies any knowledge of plaintiff's serious medical need due to cronic foot disorder. Defendant Dr. Rubin Veliz further denies that plaintiff spoke to him about this serious medical need at plaintiff's last visit to medical  –allegedly– on September 14, 1998.

16). Plaintiff accessed the (F.D.O.C.) grievance procedure and after another three months delay finally received the prescribed medical care for his serious medical need on December 2, 1998.

17). On April 7, 1999 plaintiff was experiencing pain due to agravation of the abnormal growth, after verbal denial, filed and informal grievance requesting medical care. exhibit (c) of appendix. As is shown in the response section of exhibit (c) plaintiff was instructed to access sick-call. After plaintiff accessed sick-call, institution doctor's visits and continued insistance by plaintiff an appointment with Dr. Cook was scheduled.

18). During the last days of November 1999 plaintiff was taken to see Dr. Cook at the foot health center. During this visit it was determined and prescribed by Dr. Cook that plaintiff's shoes were to be replaced along with the molded inserts.

19). As of January 3, 2000 plaintiff still had not received the new shoes prescribed. Plaintiff filed a request addressing the issue to the Dade C.I. North medical department, see exhibit (D) in appendix. As shown by the response section of exhibit (D) plaintiff was told to re-access sick-call.

20). Shortly after plaintiff received the response to his January 3, 2000 request plaintiff was taken to Castillo's orthopedics where his feet were fitted for the prescribed shoes.

21). As of February 27, 2000 plaintiff still had not received the prescribed shoes and due to extreme pain and suffering filed another request addressing the issue once again. See exhibit (E) in appendix. As is shown in the response section of exhibit (E) plaintiff was informed that he would need to be "re-evaluated".

22). As of March 6, 2000 plaintiff still had not been supplied with the prescribed medical care or any further medical care for his serious medical need. Thus plaintiff accessed the (F.D.O.C.) grievance procedure, see exhibit (F) of appendix. Pursuant to the response in exhibit (F), plaintiff's prescribed medical care had been ordered, and plaintiff would receive the shoes and inserts when they arrived. However, the grievance was denied.

8

23). On March 21, 2000 plaintiff appealed the denial to (F.D.O.C.) Tallahassee Office. Exhibit (G) of appendix. Pursuant to the response shown, the (F.D.O.C.) Tallahassee Office passed the buck back to defendant Dr. Rubin Veliz, and initiated a showing of a policy when it was stated that plaintiff must meet a criteria.

24). As of late July 2000, plaintiff still had not received the prescribed medical care when he was suddenly transferred to another institution.

25). Upon plaintiff's arrival at Glades C.I., plaintiff immediately accessed medical sick-call, and explained the issue of his prescribed medical care. Plaintiff was informed that he would have to see the institution's Chief Health Officer (CHO) and be "re-evaluated".

26). On July 29, 2000 plaintiff filed an emergency request for medical care, exhibit (H).

27). In September 2000, plaintiff was finally afforded an appointment with defendant (CHO) Dr. Vijay. During this appointment plaintiff explained to defendant Dr. Vijay all that had transpired over the past two years including the extreme pain suffered due to denial of prescribed medical care.

28). As of October 24, 2000 plaintiff still had not received any medical care for his serious medical need, and once again accessed the grievance procedure. Exhibit (I) of appendix. Pursuant to the response shown in exhibit (I) plaintiff's grievance was "approved" and an appointment was scheduled.

9

29). On October 24, 2000 plaintiff filed a formal grievance to the superintendent, exhibit (J) of appendix. Wherein plaintiff outlined the fact that he had previously been denied prescribed medical care and eventhough defendant Dr. Vijay had promised the prescribed medical care none had been forthcoming. Pursuant to the response shown in exhibit (J) it is alleged plaintiff received the shoes on 9-12-2000 and the grievance was denied.

30). On November 17, 2000 plaintiff appealed the denial of exhibit (J). See exhibit (K) of appendix, wherein plaintiff addressed the issue by informing the (F.D.O.C.) Tallahassee Office that eventhough the shoes were allegedly ordered on 9-12-2000 he had still not received them, and that the last pair he had received was on December 2, 1998 and that his present pair was worn out. Pursuant to the response shown in exhibit (K), the response from defendant Dr. Vijay is not supported by the record. Therefore your appeal is approved to the extent that plaintiff would be "re-evaluated by physician, "defendant Dr. Vijay."

31). On January 26, 2001 defendant Dr. Vijay sent plaintiff a notice of appointment for January 30, 2001. Exhibit (L) of appendix.

32). On January 30, 2001 plaintiff was transferred before his alleged scheduled appointment. Plaintiff had not received prescribed medical care, or any medical care since.

33). On February 5, 2001 plaintiff arrived at Everglades, C.I. (F.D.O.C.) and plaintiff immediately initiated his request for the prescribed medical care. See exhibit (m) of appendix. Wherein plaintiff clearly out-lined the fact that he had been prescribed special shoes for his serious medical need. And that he had not yet received the orthopedic shoes, and based on the more than 18 months

of deliberate deprivation of his serious medical need, he suffered extreme pain and urgently required the prescribed medical care, to include surgical removal of the abnormal growth and the orthopedic shoes. Pursuant to the response shown in exhibit (M), of which was filed three days after the plaintiff had already been seen by Dr. Valiente, it is stated that plaintiff was scheduled to see the "MD".

34). As of July 10, 2001 no further action had been taken. Plaintiff was still being denied prescribed medical care. Plaintiff once again initiated the grievance procedure. See exhibit (N) of appendix. Wherein plaintiff clearly out-lined the facts, he had not received medical care that had been prescribed and approved, for more than 23 months, and that he suffered great pain due to the deprivation of medical care. Pursuant to the response shown in exhibit (N) plaintiff would once again be required to re-access medical via sick-call, pay another $4.00 medical co-payment sir charge, and again be re-evaluated by the institution's CHD. The grievance was denied.

35). On July 30, 2001 plaintiff appealed the denial to the (F.D.O.C.) Tallahassee office, see exhibit (O) of appendix. Wherein plaintiff again out-lined the issues of deprivation of medical care that caused him great pain and suffering. Exhibit (O): in that "the response supplied to plaintiff by defendant Dr. Sivilla on 7-23-2001 did not appropriately address the issues presented by plaintiff" the grievance was approved and returned to the CHD for review and response.

36). On October 17, 2001 plaintiff received a memorandum informing him that he had been scheduled to see the regional medical director defendant Dr. Diaz on October 22, 2001 at 9:00 a.m., exhibit (P) of appendix.

37). As of December 3, 2001 plaintiff still had not received any form of medical care prescribed or otherwise and once again plaintiff accessed the grievance procedure. Exhibit (Q) of appendix. Plaintiff again completely out-lined the issues of medical care deprivation, and the serious pain he suffered. Pursuant to the response shown in exhibit (Q), the grievance was approved and plaintiff was allegedly scheduled to see the defendant Dr. Diaz for treatment.

## CAUSE OF ACTION

Deliberate delay and denial of prescribed medical
care for plaintiff's serious medical need, causing the
wanton infliction of un-necessary pain and suffering,
in violation of the Eighth Amendment U.S.C.A.

## " Deliberate Indifference "

In 1996, plaintiff, while assigned to Dade C.I. was sent to the office of
Podiatrist- Specialist, Dr. Michael Cook, at the South Miami Foot Health
Center, 6350 Sunset Drive, South Miami, Florida 33143.

Dr. Cook diagnosed plaintiff to have a cronic painful foot disorder
that only surgery might cure. However, Dr. Cook prescribed a course
of preventative medical care, to wit: surgical removal of the abnormal
growth 2 or 3 times a year and orthopedic shoes specially molded and
crafted to assist in easing the pain suffered; exhibit (A) of appendix.

As of August 30, 1998 plaintiff still had not received prescribed care. Plaintiff
filed a request to the CHO of Dade C.I. North, defendant Dr. Veliz, exhibit
(B) of appendix, who denied any knowledge of plaintiff's claim of cronic
painful foot disorder. Defendant Dr. Veliz further submitted false information
when he claimed plaintiff failed to tell him about the cronic, painful, foot disorder.

Plaintiff contends that defendant Dr. Veliz was repeatedly informed of
the existing cronic foot disorder and the prescribed medical care. But chose
to delay/deny plaintiff adequate medical care. In exhibit (C) defendant Dr.
Veliz deliberately delayed plaintiff's prescribed medical care by informing

13

plaintiff that he must re-access sick-call, pay the six charge and make
an appointment to be "re-evaluated".

Plaintiff followed defendant Dr. Veliz's order and re-accessed sick-call,
however, plaintiff was still forced to file a formal grievance to the
institution Warden to prompt defendant Dr. Veliz to initiate the prescribed
medical care. And on December 2, 1998 plaintiff received his first pair of
orthopedic shoes.

However, the shoes was only part of the prescribed medical care, the
plaintiff was also to be returned to see Dr. Cook 2 or 3 times a year
for surgical removal of the abnormal growth. As of April 7, 1999 the growth
on plaintiff's foot had reached the point of causing extreme pain yet the
plaintiff had not been scheduled to return to see Dr. Cook for treatment.

Plaintiff filed an informal grievance to defendant Dr. Veliz on April 7,
1999, exhibit (c) of appendix. Eventhough plaintiff expressed that he
was suffering serious pain, the response supplied by defendant Dr.
Veliz in exhibit (c) was that he was aware of plaintiff's serious medical
need, but that it was not up to plaintiff to decide when he needed
medical treatment due to pain. And plaintiff was once again advised that
he would need to access sick-call to be "re-evaluated".

Plaintiff's serious medical need of regular medical care for his cronic
painful foot disorder had been documented in plaintiff's (F.D.O.C.)
medical record. Defendant Dr. Rubin Veliz knew of plaintiff's serious
medical need for which a specific course of medical care had been
prescribed by a specialist-Podiatrist. Yet defendant Dr. Veliz chose to
ignore, delay, and deny plaintiff's serious medical need, for no other reason

than the cost of the prescribed medical care.

The deliberate acts and omissions of defendant Dr. Rubin Veliz has caused serious physical and mental pain and suffering to the plaintiff, in violation of plaintiff's constitutional rights to be free from cruel and unusual punishment under the Eighth Amendment.

Plaintiff has further documentation relevant to the cause of action against defendants named herein. However, said documentation has been placed in storage and plaintiff will need time to reacquire it to be submitted in later pleadings.

From April 7, 1999 to date plaintiff has been repeatedly forced to access the (F.D.O.C.) grievance procedure and medical sick-call to acquire medical care for his serious medical need. In or around November of 1999 after another formal grievance to the warden at Dade C.I. North plaintiff was returned to see Dr. Cook for the administration of the surgical procedure he required.

During this visit, Dr. Cook prescribed new orthopedic shoes and inserts for plaintiff's serious medical need. On January 3, 2000 plaintiff filed a request to the Dade C.I. North medical department, exhibit (D) of appendix, requesting the prescribed medical care. However, plaintiff's request was denied by an unknown defendant and plaintiff was instructed to access sick-call again to be re-evaluated. This same response is repeated again in exhibit (E) of appendix, by the same unknown defendant / respondant, who is referred to as defendant John or Jane Doe for purposes of this complaint.

It is obvious by the responses shown in exhibits (D) and (E) that the Dade C.I. North medical department practiced an unconstitutional policy to delay and or deprive plaintiff of his constitutional right to adequate medical care for his serious medical need. And that this policy was practiced for monetary reasons and not medical purpose. In violation of plaintiff's constitutional right to be free from Cruel and Unusual Punishment, due to the wanton and unnecessary infliction of physical and mental pain and suffering.

Plaintiff accessed and exhausted his administrative remedies, see exhibits (F) and (G) of appendix. Plaintiff's administrative remedies were exhausted on June 6, 2000. Yet plaintiff still had not received the prescribed medical care up to and including July 27, 2000, when plaintiff was suddenly transferred to Glades Correctional Institution (Glades C.I.).

## GLADES CORRECTIONAL INSTITUTION

On July 27, 2000 plaintiff immediately accessed medical sick-call at Glades C.I. and was allegedly scheduled to see defendant Dr. Vijay, exhibit (H) of appendix.

In September 2000, plaintiff saw defendant Dr. Vijay, at which time defendant Dr. Vijay was fully advised of plaintiff's serious medical need and the prescribed medical care for that need including the extreme pain suffered by plaintiff due to deprivation of prescribed medical care. However, as of October 24, 2000 defendant Dr. Vijay had done nothing to supply plaintiff with any form of medical care for his serious medical need. Plaintiff again accessed the (F.D.O.C.) grievance procedure, exhibit (I) of appendix.

16

In exhibit (J), defendant Dr. Vijay submitted a false report alleging that plaintiff had received the prescribed medical care. Defendant, Dr. Vijay was the Chief Health Officer (CHO) at Glades C.I. and therefore knew, or had reason to know, that plaintiff had not in fact received any medical care for his serious medical need. This fact is supported in exhibit (K) of appendix, wherein the (F.D.O.C.) Tallahassee Office stated that defendant Dr. Vijay's response, shown in exhibit (J), was not supported by the record. Plaintiffs administrative remedies while under the care of defendant Dr. Vijay were exhausted on January 7, 2001.

On January 26, 2001 assistant Warden Norman V. Jenkins issued notice that plaintiff would be scheduled for renewal of the prescribe orthopedic shoes on January 30, 2001. exhibit (L) of appendix. However, early on the morning of January 30, 2001, plaintiff was suddenly transferred to Everglades C.I. and no appointment or renewal of the prescribed medical shoes ever took place.

The acts of defendant Dr. Vijay of deliberate delay and denial by fraud have caused plaintiff extreme physical and mental pain and suffering due to the wanton infliction of extreme pain due to deprivation of prescribed medical care in violation of plaintiff's constitutional right to be free from Cruel and Unusual Punishment under the Eighth Amendment. U.S.C.A.

## EVERGLADES CORRECTIONAL INSTITUTION

Upon arrival at Everglades C.I. on February 2, 2001 plaintiff immediately accessed the Everglades C.I. medical department, exhibit (m) of appendix.

17

In or around April 2001 plaintiff was again prescribed replacement orthopedic shoes and follow-up surgical treatment by Dr. Valiente, while at Everglades C.I.. However, as of July 10, 2001 plaintiff still had not received any further medical care for his serious medical need. The pain suffered by plaintiff was so extreme that once again plaintiff accessed and exhausted the (F.D.O.C.) grievance procedure, exhibits (N) and (O) of appendix. Date of exhaustion September 11, 2001.

Pursuant to the response shown in exhibit (N), defendant Dr. Sivilla denied plaintiff the prescribed medical care for plaintiff's serious medical need based on the fact that a new company was providing health care, and that plaintiff would need to once again access medical sick-call to be re-evaluated.

It is obvious by the response shown in exhibit (N) that defendant Dr. Sivilla knew of plaintiff's serious medical need, and the fact that a specific course of treatment had been prescribed to plaintiff for the sole purpose of easing pain suffered. However defendant Dr. Sivilla chose to delay and deprive plaintiff of the prescribed medical care based on company policies formulated to provide the cheapest possible medical care. This fact is further supported in exhibit (O), wherein the (F.D.O.C.) Tallahassee Office responded as follows: " The response made to you by Dr. Sivilla on 7-23-2001 did not appropriately address the issue presented by you." The acts of defendant Dr. Sivilla in the deliberate delay and denial of prescribed medical care have caused the wanton and unnecessary infliction of serious pain and suffering upon plaintiff in violation of plaintiff's constitutional right to be free of Cruel and Unusual Punishment under the 8th Amendment.

On October 17, 2001 plaintiff recieved a notice from Dr. Gonzalez, CHD at Everglades C.I. exhibit (P) of appendix. Pursuant to this notice plaintiff was informed that he was scheduled to see the regional medical director defendant Dr. Diaz on 10-22-2001 at 9:00 a.m. "to further disscuss the issue."

However, it should be noted that plaintiff had already been seen by CHD Dr. Gonzalez at this point, and Dr. Gonzalez had recommended that plaintiff be given the prescribed treatment, exhibit (P).

On 10-22-2001 plaintiff was seen by defendant Dr. Diaz at 3:15 p.m. Defendant Dr. Diaz allegedly ordered X-rays stated that he would personally remove the abnormal growth and order the prescribed orthopedic shoes and inserts if necessary.

However, as of December 3, 2001 plaintiff still had not recieved the prescribed medical care, or any medical care for his serious painful medical need. Thus plaintiff once again accessed the (F.D.O.C.) grievance procedure exhibit (Q) of appendix. Wherein plaintiff clearly stated two facts at issue:

    1.) The medical treatment was prescribed for his serious medical need.

    2). Pain and Suffering.

Pursuant to the response shown in exhibit (Q) plaintiff had been scheduled for the required surgical procedure; "grievance approved". But as of the date of the filing of this complaint plaintiff still has not recieved any medical care for his serious medical need.

19

Plaintiff suffers debilitating pain of which greatly restricts his ability to conform to normal everyday operation. The deliberate delay and denial of prescribed medical care for plaintiff's serious painful medical need by defendant Dr. Diaz has caused the continued wanton and unnecessary infliction of pain constituting Cruel and Unusual Punishment upon plaintiff in violation of the Eighth Amendment. U.S.C.A.

The motivation for the acts of deliberate indifference practiced against plaintiff stems from the policies of defendant Wexford Health Source Incorporated. Where among other things defendant Wexford Health Source Inc. has a fixed price contract with the (F.D.O.C.). And any money not spent on prisoners is it's own to keep or distribute amongst it's shareholders, of whom in most cases are the doctors and other employees of defendant Wexford Health Source Inc.

Policy making officials of the (F.D.O.C.) and defendants particularly the Chief Health Officials named as defendants in this complaint knew of the longstanding serious medical need of plaintiff and the pain suffered, yet chose to deliberately delay and deny plaintiff the prescribed medical care or any adequate medical care. in violation of plaintiff's Constitutional right to be free of Cruel and Unusual Punishment under the Eighth Amendment. U.S.C.A.

All defendants herein have refused to obey the Podiatrist/specialists determination that plaintiff required specific medical treatment for his serious medical need, to wit: special orthopedic shoes and inserts, and surgical removal of abnormal growth two or three times a year.

These knowing and deliberate refusals were based on non medical reasoning. Deliberate indifference arises when the presence of great pain is known, whether or not the prescribed medical care would help relieve such pain, but is ignored.

The defendants named herein were not medically qualified to overrule, modify, or disregard, the specialist's determination that plaintiff required orthopedic shoes, and periodic surgery to remove the un-natural growth. All defendants knew of the specialist's determination and prescribed medical care to keep plaintiff from suffering unnecessary pain. But despite such knowledge, intentionally and unreasonably delayed, denied, and or interfered with the prescribed course of medical treatment. The acts outlined in this complaint were deliberate indifference toward plaintiff's serious medical need. Plaintiff has and still is suffering great pain due to the acts of deliberate indifference by all defendants named herein.

The facts as pleaded above show that each and every defendant is jointly and severally liable for compensatory and punitive damages per 42 U.S.C. § 1983 for violations under color of law pursuant to plaintiff's Constitutional right to be free from Cruel and Unusual Punishment. And that the defendants are further liable for attorney fees per U.S.C. § 1988, actually and necessarily incurred in enforcing these rights.

## DEMAND FOR JUDGMENT

Wherefore, plaintiff Lenzo Grooms Jr., demands compensatory damages from each and every defendant jointly and severally for pain and suffering in the amount of $500,000.00 plus such greater amounts as may be proved at trial. And punitive damages sufficient to punish past wrongdoing and deter similar conduct in the future. And attorney fees actually and necessarily incurred, and prescribed medical care overall.

## DEMAND FOR JURY TRIAL

Respectfully Submitted

Lenzo Grooms Jr. #028300 D-4-102-L
Everglades Correctional Institution
P.O.B 949000
Miami Florida 33194-9000

## CERTIFICATE OF SERVICE

I hereby certify that the original and seven (7) true and correct copies of the foregoing 42 U.S.C. § 1983 complaint have been hand delivered by me to the proper F.D.O.C. personnel in charge of inmate mail at Everglades C.I., to be sent via U.S. Mail to the Clerk of the United States District Court, Southern District of Florida this 1 day of March 2002.

/s/ Lenzo Grooms Jr.
Lenzo Grooms Jr. # 018300

## NOTARIZED OATH

Under penalty of perjury I Lenzo Grooms Jr. do hereby swear that all contained herein, in the 42 U.S.C. § 1983 complaint is true and correct to the best of my knowledge, in this foregoing 42 U.S.C § 1983 complaint.

State Of Florida
County Of Dade

WILLIAM G. BERNARD

W ___ B ___ d
Notary Signature



WILLIAM G. BERNARD
MY COMMISSION # CC 735666
EXPIRES: 04/21/2002
1-800-3-NOTARY   Fla. Notary Services & Bonding Co.

INMATE I.D. PROVID

22